| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Robert P Goe<br>Goe Forsythe & Hodges LLP<br>17701 Cowan<br>Building D<br>Suite 210<br>Irvine, CA 92614<br><br>949−798−2460<br><br>*Plaintiff or Attorney for Plaintiff* | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA − RIVERSIDE**

| In re:<br><br>Laguna Hills Allspace<br><br>Debtor(s). | CASE NO.: 6:26−bk−15143−RB<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: 6:26−ap−01134−RB |
|---|---|
| Binnquist Development Incorporated<br><br>Plaintiff(s)<br>Versus<br><br>Dennis French Enterprises, LLC<br><br>**(See Attachment A for names of additional defendants)**<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left−hand corner of this page. The deadline to file and serve a written response is **12/17/2026.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **February 23, 2027** |
| **Time:** | **03:00 PM** |
| **Hearing Judge:** | **Magdalena Reyes Bordeaux** |
| **Location:** | **3420 Twelfth St., Crtrm 301, Riverside, CA 92501** |

**You must comply with LBR 7016−1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court−approved joint status report form is available on the court's website (LBR form F 7016−1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016−1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: November 17, 2026

By: "s/" Susan Hawkinson
Deputy Clerk

# ATTACHMENT A
Names of plaintiffs and defendants

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| Binnquist Development Incorporated | Dennis French Enterprises, LLC<br>Landar Inc.<br>Sunbelt Holdings Limited<br>T&T Heritage Inc.<br>Tee Time Cash, LLC<br>Sunbelt Holdings, LLC<br>T AND T HERITAGE, INC. |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]** and (2) the accompanying pleading(s) entitled:

________________________________________________________________________________

________________________________________________________________________________

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005−2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____________________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

________________________________________________ ____________________________
*Date* *Printed Name* *Signature*

# UNITED STATES BANKRUPTCY COURT

## Early Meeting of Counsel and Status Conference Instructions

## Effective
## March 28, 2022

**1**. **Service of Order.** A copy of this Order must be served with the summons and complaint under Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference. The proof of service must indicate service of the summons, complaint, and copy of this Order.

**2**. **Local Bankruptcy Rule 7026-1**. Compliance with Local Bankruptcy Rule 7026-1 ("LBR 7026-1") is required in ALL adversary proceedings.

**3**. **Rule 26(f) Meeting**. Parties must meet and confer under Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f) Meeting") at least 21 days before the status conference date indicated in the summons unless all defendants default.

The parties are jointly responsible for scheduling and attending the Rule 26(f) Meeting. During the Rule 26(f) Meeting, the parties must:

(a) discuss the nature and basis of their claims and defenses, as well as the possibilities for a prompt settlement or resolution of the case;

(b) make or arrange for the initial disclosures required by Rule 26(a)(1); and

(c) develop a proposed discovery plan.

***The parties are directed to approach a Rule 26(f) Meeting cooperatively and in good faith. The discussion of claims and defenses must be substantive and meaningful.***

4. **Rule 26(a)(1) Initial Disclosures**. Under Rule 26(a)(1), a party must, without waiting for a pending discovery request, provide to other parties:

a. The name and, if known, the address, and telephone number of each individual likely to have discoverable information along with the subjects of that discoverable information that the disclosing party may use to support its claims or defenses, unless the use of this discoverable information would be solely for impeachment;

b. A copy of all documents, electronically stored information, and tangible things the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use of these documents, electronically stored information, and tangible things would be solely for impeachment. (*If copies of the above are unavailable, you must provide a description by category and location of such documents, electronically stored information, and tangible things*);

c. A calculation of all damages claimed by the disclosing party. Under Rule 34, the disclosing party must also make available for inspection and copying all documents and evidentiary materials on which each calculation is based, which includes but is not limited to materials relating to the nature and extent of injuries suffered, unless such documents and evidentiary materials are privileged or protected from disclosure;

d. Under Rule 34, the disclosing party must make available for inspection and copying any insurance agreements where an insurance business is or may be

liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P. 26(a)(1)(A). Rule 26(a)(1) requires a party to make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures. F.R.Civ.P. 26(a)(1)(E).

**5**. **Rule 16(b) Scheduling Conference**. The initial status conference scheduled by the Court in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.

**6.** **Alternative Dispute Resolution ("ADR").** The parties must explore the feasibility of ADR to reach a settlement or early resolution of the adversary proceeding. The reasons for not participating in a form of early ADR must be explained in the Joint Status Report. If parties elect not to participate in early ADR effort(s), the Court could direct parties to ADR before trial.

7. **Discovery Plan.** At the Rule 26(f) Meeting, parties must also discuss any issues about preserving discoverable information and develop a proposed discovery plan. The discovery plan discussion following the initial disclosures must address the relevance of the discovery sought and the sequence and timing of such discovery, including how such discovery will be conducted. The discovery plan deadlines must be mutually agreed upon, with a goal to achieve resolution of the case with minimum expense and delay.

**8**. **Joint Status Report**. Not later than 14 days before the status conference/Rule 16(b) Scheduling Conference date set forth in the summons, the parties must file a Joint Status Report using mandatory **LBR Form F 7016-1.1.** The Joint Status Report must contain the information

set forth in LBR 7016-1(a)(2), and a statement that the parties completed the Rule 26(f) Meeting and that the parties made the initial disclosures required by Rule 26(a)(1). The Joint Status Report shall also serve as the written report of the Rule 26(f) Meeting.

Please note that under Local Bankruptcy Rule 7016-1(a)(3), if any party fails to cooperate in the preparation of a joint status report, each party is required to file a unilateral status report not less than 7 days before the date scheduled for the status conference. The status report should include a declaration indicating the attempts made by each party to contact or obtain the cooperation of the non-complying party in the preparation of a joint status report.

Parties are excused from filing a status report if one of the following is true:

(1) prior to the date scheduled for the status conference, the parties filed, and the Court entered an order approving a stipulation that resolves all issues raised by the adversary proceeding and provides either for dismissal of the action in its entirety or the entry of judgment in the action;

(2) defaults were entered as against all defendants and the plaintiff filed and served a motion for default judgment prior to the date scheduled for the status conference;

(3) the parties filed and, prior to the date scheduled for the status conference, the Court entered an order approving, a stipulation continuing the status conference to a later date (in which case a written status report must be filed not less than 7 days in advance of the continued status conference date); or

(4) The Court expressly relieved the parties of the obligation to file a written status report.

9. **<u>Status Conference / Rule 16(b) Scheduling Conference</u>.** At the Rule 16(b) Scheduling Conference, the Court will review the discovery plan set forth in the Joint Status Report and set

appropriate deadlines. The Court seeks to try all adversary proceedings not later than 18 months after filing of the complaint. Consequently, all deadlines in the schedule, including the dispositive motion deadline, must be met within 12 to 14 months after filing of the complaint to afford adequate time for briefing and ruling prior to the final pretrial conference and trial date.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all matters to be covered.

**10**. **Default.** If no timely response to the complaint is filed with the Court, the plaintiff may request entry of default by the clerk prior to the status conference date shown in the summons. F.R.Civ.P. 55(a). The plaintiff may also request entry of a default judgment by filing and serving an appropriate motion. F.R.Civ.P. 55(b)(2).

**11**. **Sanctions.** Failure to comply with these instructions may subject the responsible party and/or counsel to sanctions. The failure of either party to cooperate in the preparation and filing of a Joint Status Report or appear at the status conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).

Magdalena Reyes Bordeaux

United States Bankruptcy Judge

Robert P. Goe - State Bar No. 137019
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Suite 210, Building D
Irvine, CA 92614
rgoe@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for: Creditor Binnquist Development Incorporated

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>LAGUNA HILLS ALLSPACE,<br><br>Debtor and Debtor in Possession | Case No. 6:26-bk-15143-RB<br><br>Chapter 11<br><br>Adv. Case No. 6:26-ap- |
| BINNQUIST DEVELOPMENT INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS FRENCH ENTERPRISES, LLC, a California limited liability company; LANDAR INC., a Nevada corporation; SUNBELT HOLDINGS LIMITED aka SUNBELT HOLDINGS, LLC, a California limited liability company; T&T HERITAGE INC., aka T AND T HERITAGE, INC., a corporation; and TEE TIME CASH, LLC, a Nevada limited liability company.<br><br>Defendant(s). | **COMPLAINT FOR:**<br>**(1) DISALLOWANCE OF ALLEGED INSIDER CLAIMS IN THEIR ENTIREY;**<br>**(2) DECLARATORY RELIEF TO RECHARACTERIZE ALLEGED INSIDER CLAIMS AS EQUITY;**<br>**(3) MANDATORY SUBORDINATION OF ALLEGED INSIDER CLAIMS PURSUANT TO 11 U.S.C. § 510(b); AND**<br>**(4) EQUITABLE SUBORDINATION OF ALLEGED INSIDER CLAIMS PURSUANT TO 11 U.S.C. § 510(c)** |

Binnquist Development Incorporated and Plaintiff in this adversary proceeding ("BDI" or "Plaintiff"), files this complaint ("Complaint") against Defendants, DENNIS FRENCH

ENTERPRISES, LLC, a California limited liability company; LANDAR INC., a Nevada corporation; SUNBELT HOLDINGS LIMITED aka SUNBELT HOLDINGS, LLC, a California limited liability company; T&T HERITAGE INC., aka T AND T HERITAGE, INC., a corporation; and TEE TIME CASH, LLC, a Nevada limited liability company (collectively, Defendants"), and respectfully alleges as follows:

**SUBJECT MATTER JURISDICTION AND VENUE**

1. This adversary proceeding arises in and relates to the Debtor's pending chapter 11 bankruptcy case entitled *In re Laguna Hills AllSpace*, Case No. 6:26-bk-15143-RB ("Bankruptcy Case").

2. On June 26, 2026 (the "Petition Date"), Laguna Hills Allspace, the debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

3. This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334(a) as the claims for relief in this adversary proceeding arise in and relate to the Bankruptcy Case. This adversary proceeding is a civil proceeding arising in and related to the Bankruptcy Case, which is pending before the United States Bankruptcy Court for the Central District of California, Riverside Division ("Bankruptcy Court").

4. Pursuant to Rule 3007(b) of the Federal Rules of Bankruptcy Procedure ("FRBP"), an objection to claim may be included in an adversary proceeding.

5. Pursuant to Rule 7001(h) of the FRBP, an adversary proceeding includes a proceeding to subordinate allowed claims.

6. Pursuant to Rule 7001(i) of the FRBP, an adversary proceeding includes a proceeding to obtain a declaratory judgment.

7. This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (O).

8. Pursuant to FRBP 7008, Plaintiff consents to the Bankruptcy Court entering a final judgment and/or order.

9. Venue in this Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

10. Plaintiff is a California corporation and files this Complaint in its capacity as a creditor of the Debtor in the Bankruptcy Case.

11. On September 24, 2026, Plaintiff timely filed proof of claim no. 2 ("BDI Claim") in the amount of $5,084,192.21 in the Debtor's Bankruptcy Case.

12. Pursuant to 11 U.S.C. § 502, this Court is empowered to determine the allowance or disallowance of claims after an objection is made. Section 502 of the Bankruptcy Code, provides in relevant part:

> (a) A claim. . . proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects. 11 U.S.C. § 502.

13. Plaintiff, as the holder of the BDI Claim, is a creditor of the Debtor's Bankruptcy Case and has standing as a "party in interest" pursuant to 11 U.S.C. § 502 to file this Complaint for disallowance and subordination of the Alleged Insider Claims (as defined below) of the Defendants.

14. Defendant, Dennis French Enterprises, LLC ("DF Enterprises"), is a California limited liability company doing business in California with its principal place of business located at 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211. DF Enterprises's agent for service of process is Dennis French, 45674 Gurley Drive, Indian Wells, California 92210. Debtor lists the address of DF Enterprises as 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211 on its Schedules (as defined below) and on its "List of Creditors Who Have the 20 Largest Unsecured Claims" filed on June 26, 2026 as Docket No. 1 in this Bankruptcy Case[1].

15. Defendant Landar Inc. ("Landar") is a Nevada corporation doing business in California with its principal business office in California located at 77-564 Country Club Drive, # 100, Palm Desert, California 92211. Landar's agent for service of process is Becky A. Casten, 77-564 Country Club Drive, # 100, Palm Desert, California 92211.

---

[1] DF Enterprises (and the other Defendants) is clearly an insider who should not have been placed on the 20 largest list.

16. Landar's chief executive officer and secretary is Dennis French, with a purported address of 10002 Via Solano Court, Reno, Nevada 89511. Landar's chief financial officer is Dennis French, located at 77-564 Country Club Drive, # 100, Palm Desert, California 92211.

17. Debtor lists the address of Landar as 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211 on its Schedules (as defined below) and on its "List of Creditors Who Have the 20 Largest Unsecured Claims" filed on June 26, 2026 as Docket No. 1 in this Bankruptcy Case.

18. Defendant Sunbelt Holdings Limited, also known as Sunbelt Holdings, LLC ("Sunbelt"), is a California limited liability company doing business in California with its principal place of business located at 77564 Country Club Drive, Suite 100, Palm Desert, California 92211. Sunbelt's agent for service of process is Dennis French, 77564 Country Club Drive, Suite 100, Palm Desert, California 92211. Debtor lists the address of Sunbelt as 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211 on its Schedules (as defined below) and on its "List of Creditors Who Have the 20 Largest Unsecured Claims" filed on June 26, 2026 as Docket No. 1 in this Bankruptcy Case.

19. Defendant T&T Heritage Inc. ("T&T") also known as T and T Heritage, Inc., is an alleged corporation doing business in California. Debtor lists the address of T&T as 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211 on its Schedules (as defined below) and on its "List of Creditors Who Have the 20 Largest Unsecured Claims" filed on June 26, 2026 as Docket No. 1 in this Bankruptcy Case[2].

20. Defendant Tee Time Cash, LLC ("Tee Time") is a Nevada limited liability corporation doing business in California. Debtor lists the address of Tee Time as 77-564 Country Club Drive, Suite 150, Palm Desert, California 92211 on its Schedules (as defined below) and on its "List of Creditors Who Have the 20 Largest Unsecured Claims" filed on June 26, 2026 as Docket No. 1 in this Bankruptcy Case.

21. DF Enterprises, Landar, Sunbelt, T&T and Tee Time shall collectively be referred to herein as "Defendants".

---

[2] Plaintiff's counsel could not locate T&T as an entity formed in the State of California.

22. All Defendants are insiders of the Debtor as defined by 11 U.S.C. § 101(31).

## FACTUAL ALLEGATIONS

23. Debtor, a general partnership, is the owner of the real property commonly identified as 1827 Atlanta Avenue, in Riverside, California (the "Property"). BDI is a California corporation that served as the direct general contractor for Debtor for a construction project at the Property (the "Project").

24. In August 2019, Debtor accepted BDI's bid for the Project, the parties executed a written contract for the Project, and BDI commenced construction work at the Property. The contract between the parties was subsequently amended on several occasions for additional work, labor, and materials for the Project. Work on the Project was completed in or around late February 2020, but a dispute arose between the various parties to the Project regarding, among other things, the amounts charged by and owed to BDI.

25. On March 6, 2020, BDI recorded a mechanic's lien for the amounts it claimed remained unpaid by Debtor. On June 3, 2020, BDI filed a Complaint ("Complaint") in the Riverside Superior Court (Case No. RIC2001449, the "Civil Case") against Debtor and its general partners, Dennis French and Rick Tarnutzer, for breach of contract and for enforcement of BDI's mechanic's lien. Debtor filed a cross-complaint against BDI and its principal and bond company, along with the architect on the Project and all the subcontractors, and ultimately filed its operative Second Amended Cross-Complaint (Cross-Complaint") on December 21, 2021. A number of other civil lawsuits were filed involving the Project and consolidated with the Civil Case. The consolidated cases were resolved prior to trial on the Civil Case.

26. On January 12, 2026, trial commenced in the Civil Case as a bench trial before the Honorable Harold W. Hopp in Department 1 of the Riverside Superior Court ("Superior Court") to resolve the claims in BDI's Complaint and Debtor's Cross-Complaint. The matter was submitted after the close of evidence and the conclusion of closing arguments on February 23, 2026. On May 19, 2026, the Superior Court issued its tentative decision in favor of BDI and against Debtor and ordered counsel for BDI to prepare a Statement of Decision pursuant to Code of Civil Procedure section 632 and California Rules of Court rule 3.1590.

27. Prior to the Superior Court entering the final statement of decision or judgment, Debtor filed this Bankruptcy Case and a Notice of Stay of Proceedings in the Civil Case on June 26, 2026. On August 20, 2026, the Bankruptcy Court entered its Order Granting Motion for Relief From the Automatic Stay to allow the Civil Case to proceed to final judgment.

**<u>THE BANKRUPTCY CASE AND THE ALLEGED INSIDER CLAIMS</u>**

28. On the Petition Date, Debtor filed its chapter 11 voluntary petition ("Petition"), schedules (as amended) (collectively, "Schedules") and statement of financial affairs ("SOFA").

29. On Debtor's Schedule A/B, Debtor lists the Property as having a value of $7,500,000.

30. On Debtor's Schedule G, Debtor lists Emerson Process Management ("Emerson") as its tenant on the Property with a commercial lease agreement expiring on January 31, 2035.

31. On Debtor's Schedule G, Debtor lists Howmedica Osteonics Corp. aka Stryker ("Stryker") as its tenant on the Property with a commercial lease agreement expiring on April 1, 2027.

32. On the SOFA, Debtor lists rental income from the Property in the amount of $564,742.00 for the year 2024 and $578,459.00 for the year 2025. Debtor also lists rental income from the Property in the amount of $233,049.00 for 2026 through the Petition Date.

33. Plaintiff is informed and believes, and on that basis alleges, that Debtor has been collecting total monthly rental income of approximately $83,000 from Emerson and Stryker since February of 2020 to date.

34. On Debtor's most recently filed monthly operating report for the period ending September 30, 2026, Debtor lists $83,187.00 in monthly rental income from Emerson and Styker. *See* Docket No. 49.

35. On the SOFA, Debtor lists DF Enterprises as the managing partner of the Debtor holding a 51% interest in the Debtor.

\\\

\\\

36. On Schedule F of the Debtor's Schedules, Debtor lists the following debts:

a. $888,640.00 owed to DF Enterprises on account of "Funds lent by insider for remodel, expenses and legal fees". The date the debt was incurred is blank on the Schedules.

b. $545,000.00 owed to Landar on account of "Funds lent by insider for remodel and legal fees". The date the debt was incurred is blank on the Schedules.

c. $2,035,535.00 owed to Sunbelt on account of "This insider entity purchased the loan on the Debtor's real property; however, the new note and deed of trust were mistakely [sic] never recorded on title." The date the debt was incurred is blank on the Schedules.

d. $31,000.00 owed to Sunbelt on account of "Funds lent by insider for legal fees". The date the debt was incurred is blank on the Schedules.

e. $786,500.00 owed to T&T on account of "Funds lent by insider for 2019 remodel". The date the debt was incurred is blank on the Schedules.

f. $200,000.00 owed to Tee Time Cash on account of "Funds lent by insider for 2020 remodel". The date the debt was incurred is blank on the Schedules.

g. Debtor admits on the Schedules that the Defendants are insiders of the Debtor as defined by 11 U.S.C. § 101(31).

h. The debts on Schedule F listed by Debtor as owing to the Defendants shall be collectively referred to herein as the "Alleged Insider Claims".

37. The claims bar date in Debtor's Bankruptcy Case was October 20, 2026 ("Claims Bar Date"). *See* Docket No. 32 in Debtor's Bankruptcy Case.

38. Defendants did not file proofs of claim in Debtor's Bankruptcy Case by the Claims Bar Date.

39. As of the date of the filing of this Complaint, Defendants have not filed proofs of claim in Debtor's Bankruptcy Case.

40. On September 14, 2026, Plaintiff's counsel requested that Debtor produce the following information with respect to the Alleged Insider Claims ("Insider Information"):

a. Dates of alleged loans;

b. Dates of alleged payments made by Defendants to Debtor;

c. Amount of alleged payments made by Defendants to Debtor; and

d. Entity(ies) that received the alleged payments;

41. On September 14, 2026, Plaintiff's counsel requested that Debtor produce the following documentation with respect to the Alleged Insider Claims ("Insider Documentation"):

a. Promissory notes;

b. Evidence of funding of the loans;

c. Wire transfer documentation; and

d. Checks.

42. Plaintiff's counsel did not receive a response to the September 14, 2026 request for the Insider Information and Insider Documentation evidencing the Alleged Insider Claims.

43. On September 25, 2026, Plaintiff's counsel sent a follow up to Debtor's counsel for the Insider Information and Insider Documentation evidencing the Alleged Insider Claims.

44. On September 25, 2026, Plaintiff's counsel received a response from Debtor's counsel advising that "They are working on it for our records as well".

45. Debtor did not produce the Insider Information and Insider Documentation evidencing the Alleged Insider Claims in response to the September 25, 2026 follow up request by Plaintiff's counsel.

46. On October 13, 2026, Plaintiff's counsel sent another follow up to Debtor's counsel for the Insider Information and Insider Documentation evidencing the Alleged Insider Claims.

47. On October 13, 2026, Debtor's counsel responded to Plaintiff's counsel advising that "I have received the documents, and we are reviewing them; there may be some redactions. I can provide those by next week."

48. On October 20, 2026, Plaintiff's counsel sent a further follow request regarding the status of the production of the Insider Information and Insider Documentation evidencing the Alleged Insider Claims.

49. On October 20, 2026, Debtor's counsel produced redacted bank statements and loan disbursement schedules for the Alleged Insider Claims.

50. Debtor did not produce all of the Insider Information and Insider Documentation requested by BDI evidencing the Alleged Insider Claims.

51. No promissory notes or any debt instruments were produced by Debtor evidencing the Alleged Insider Claims.

52. No deeds of trust or security agreements were produced by Debtor evidencing the Alleged Insider Claims.

## FIRST CLAIM FOR RELIEF

**(For Disallowance of Alleged Insider Claims against Defendants)**

**[11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3007 and 7001]**

53. Plaintiff realleges and incorporates herein by reference each and every allegation contained above in this Complaint as if set forth fully herein.

54. Debtor scheduled the Alleged Insider Claims as follows on the Schedules:

a. $888,640.00 owed to DF Enterprises on account of "Funds lent by insider for remodel, expenses and legal fees". The date the debt was incurred is blank on the Schedules.

b. $545,000.00 owed to Landar Inc on account of "Funds lent by insider for remodel and legal fees". The date the debt was incurred is blank on the Schedules.

c. $2,035,535.00 owed to Sunbelt on account of "This insider entity purchased the loan on the Debtor's real property; however, the new note and deed of trust were mistakely [sic] never recorded on title." The date the debt was incurred is blank on the Schedules.

d. $31,000.00 owed to Sunbelt on account of "Funds lent by insider for legal fees". The date the debt was incurred is blank on the Schedules.

e. $786,500.00 owed to T&T on account of "Funds lent by insider for 2019 remodel". The date the debt was incurred is blank on the Schedules.

f. $200,000.00 owed to Tee Time on account of "Funds lent by insider for 2020 remodel". The date the debt was incurred is blank on the Schedules.

55. Defendants did not file proofs of claim with respect to the Alleged Insider Claims listed on the Debtor's Schedules.

56. Pursuant to 11 U.S.C. § 1111(a), "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated."

57. Pursuant to 11 U.S.C. § 502, this Court is empowered to determine the allowance or disallowance of claims after an objection is made. Section 502(a) of the Bankruptcy Code, provides in relevant part: "A claim. . . proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects."

58. Pursuant to 11 U.S.C. § 502:

> "(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured…"

59. Section 502(b)(1) of the Bankruptcy Code authorizes the bankruptcy court to determine whether a claim is valid and enforceable under applicable state law: (b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim. .. and shall allow such claim in such amount, except to the extent that--(l) such claim is unenforceable against the debtor... under any ... applicable law for a reason other than because such claim is contingent or unmatured. 11 U.S.C. § 502(b)(l); *See also* 11 U.S.C. § 558 ("The

estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.").

60. If objection is made to the proof of claim, as set forth herein in this Complaint, the creditor [Defendants] has the ultimate burden of persuasion as to the validity and amount of the claims. *In re Garvida*, 347 B.R. 697 (9th Cir. BAP, 2006).

61. There is no evidence that the amounts listed as owing to the Defendants on the Schedules were paid to the Debtor.

62. There is no evidence that the amounts listed as owing to the Defendants on the Schedules were for loans made to the Debtor.

63. The Insider Information and Insider Documentation produced by Debtor evidencing the Alleged Insider Claims state that payments were made to the Debtor on account of "capital", "capital infusion", "capital contribution", and "contribution".

64. The Insider Information and Insider Documentation produced by Debtor evidencing the Alleged Insider Claims state that payments were made to third parties and not the Debtor.

65. There is no evidence of an agreement between the Defendants and the Debtor of loan terms with respect to the alleged loans that Debtor asserts are the basis of the Alleged Insider Claims.

66. There are no promissory notes, deeds of trust, or security agreements evidencing the Alleged Insider Claims.

67. There is no evidence of the interest rate, the maturity date, or any other terms of repayment evidencing the alleged loans that Debtor asserts are the basis of the Alleged Insider Claims.

68. There is deep-rooted Supreme Court and Ninth Circuit precedent which established that the nature and scope of a right to payment is determined by state law. *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007); *see also In re* Fitness, 714 F.3d 1141, 1146 (9th Cir. 2013).

GOE FORSYTHE & HODGES LLP
17701 Cowan, Suite 210
Irvine, CA 92614

69. Unless there is evidence of agreement as to all material terms, there is no contract. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006) (citing *Banner Entm't, Inc. v. Superior Court (Alchemy Filmworks, Inc.)*, 62 Cal. App. 4th 348, 357-58 (1998)).

70. The absence of agreement as to all material terms renders an alleged contract too indefinite to enforce. *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811-12. *Accord*, *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1178-79 (9th Cir. 2007).

71. There is no evidence of the agreement between the Defendants and the Debtor regarding all material terms of the alleged loans that Debtor asserts are the basis of the Alleged Insider Claims.

72. Pursuant to California Civil Code § 1624(a):

> "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:
> (1) An agreement that by its terms is not to be performed within a year from the making thereof.
> (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in Section 2794…
> (6) An agreement by a purchaser of real property to pay an indebtedness secured by a mortgage or deed of trust upon the property purchased, unless assumption of the indebtedness by the purchaser is specifically provided for in the conveyance of the property.
> (7) A contract, promise, undertaking, or commitment to loan money or to grant or extend credit, in an amount greater than one hundred thousand dollars ($100,000), not primarily for personal, family, or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit. For purposes of this section, a contract, promise, undertaking, or commitment to loan money secured solely by residential property consisting of one to four dwelling units shall be deemed to be for personal, family, or household purposes."

73. The Alleged Insider Claims are for alleged loans that are not based upon a writing and are for amounts greater than $100,000.

74. Pursuant to California Code of Civil Procedure § 339, "An action upon a contract, obligation or liability not founded upon an instrument of writing" must be brought within two years.

75. The Alleged Insider Claims are for alleged loans made more than two years from the Petition Date. And, therefore, beyond the statute of limitations.

76. The alleged interest rates are not disclosed for the alleged loans which Debtor asserts are the basis of the Alleged Insider Loans.

77. The Alleged Insider Claims are not based upon a written agreement signed by the Debtor.

78. The Alleged Insider Claims violate the usury provision of the California Constitution which provides that a written agreement signed by the borrower is required to legally charge an interest rate above the 7% constitutional default legal rate. *See* California Constitution Article XV, Section 1.

79. The lack of evidentiary support for the Alleged Insider Claims prevents them from constituting prima facie evidence of their validity or their amount. The Ninth Circuit BAP has held that: "A creditor who files a proof of claim that lacks sufficient support under Rule 3001(c) and (f) does so at its own risk. That proof of claim will lack prima facie validity, so any objection that raises a legal or factual ground to disallow the claim will likely prevail absent an adequate response by the creditor." *In re Campbell*, 336 B.R. 430, 436 (9th Cir. BAP 2005); *See also, In re Heath*, 331 B.R. 424, 437 (9th Cir. BAP 2005).

80. A claimant must attach copies of writings upon which claims are based in order to carry its burden of establishing a prima facie case against the debtor. *Hardin v. Gianni (In re King Street Investments Inc.*), 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998).

81. As set forth above in the allegations in the First Claim for Relief, the Alleged Insider Claims are not valid general unsecured claims under applicable California law.

82. Plaintiff requests that the Bankruptcy Court enter judgment and/or order disallowing the Alleged Insider Claims of the Defendants in their entirety pursuant to 11 U.S.C. § 502, California Civil Code § 1624(a), California Code of Civil Procedure § 339 and California Constitution Article XV, Section 1.

83. Failure to disallow the Alleged Insider Claims will result in the Defendants, the insiders of the Debtor, receiving undue recoveries against the Debtor's estate, to the detriment of holders of allowed claims, including Plaintiff.

GOE FORSYTHE & HODGES LLP
17701 Cowan, Suite 210
Irvine, CA 92614

## SECOND CLAIM FOR RELIEF

**(For Declaratory Relief to Recharacterize Alleged Insider Claims against Defendants)**

**[11 U.S.C. § 502(b)(1); Fed. R. Bankr. P. 3007 and 7001]**

84. Plaintiff realleges and incorporates herein by reference each and every allegation contained above in this Complaint as if set forth fully herein.

85. The Alleged Insider Claims are listed as general unsecured claims on the Debtor's Schedules.

86. As set forth above in the allegations in the First Claim for Relief, the Alleged Insider Claims lack evidence to support alleged loans made to the Debtor.

87. As set forth above in the allegations in the First Claim for Relief, the Alleged Insider Claims were made to the Debtor on account of "capital", "capital infusion", "capital contribution", and "contribution".

88. As set forth above in the allegations in the First Claim for Relief, the Alleged Insider Claims were made to third parties and not the Debtor.

89. As set forth above in the allegations in the First Claim for Relief, the Alleged Insider Claims are not valid general unsecured claims under applicable California law.

90. An actual controversy exists between Plaintiff and the Defendant concerning whether Defendants hold valid, allowable, general unsecured claims against the Debtor's bankruptcy estate.

91. Plaintiff requests a judicial declaration that the Alleged Insider Claims held by Defendants are not valid, allowable, general unsecured claims against the Debtor's bankruptcy estate and should be recharacterized as equity interests in the Debtor.

92. Failure to recharacterize the Alleged Insider Claims as equity interests in the Debtor will result in the Defendants, the insiders of the Debtor, receiving undue recoveries against the Debtor's estate, to the detriment of holders of allowed general unsecured claims, including Plaintiff.

\\\

**THIRD CLAIM FOR RELIEF**

**(Mandatory Subordination of Alleged Insider Claims**

**Pursuant to 11 U.S.C. § 510(b) against Defendants)**

93. Plaintiff realleges and incorporates herein by reference each and every allegation contained above in this Complaint as if set forth fully herein full.

94. Section 510(b) of the Bankruptcy Code provides:

> "For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, **or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security**, except that if such security is common stock, such claim has the same priority as common stock." (Emphasis added.)

95. Section 510(b) subordination is mandatory and applies to entire categories of claims.

96. Section 510(b) is referred to as "mandatory subordination," as claims within its reach are subordinated automatically by operation of law.

97. Section 510(b) ensures that claims of true creditors are not diluted by claims of stockholders or former stockholders seeking damages arising from their stock interests.

98. The Insider Information and Insider Documentation produced by Debtor evidencing the Alleged Insider Claims state that payments were made to the Debtor on account of "capital", "capital infusion", "capital contribution", and "contribution".

99. The Insider Information and Insider Documentation produced by Debtor evidencing the Alleged Insider Claims state that payments were made to third parties and not the Debtor.

100. The Ninth Circuit broadly interprets the scope of 11 U.S.C. § 510(b). *See O'Donnell v. Tristar Esperanza Properties., LLC (In re Tristar Esperanza Properties., LLC)*, 782 F.3d 492, 495 (9th Cir. 2015)(*quoting In re Betacom of Phx., Inc.,* 240F3d 823 (9th Cir. 2001), "[t]here are two main rationales for mandatory subordination: 1) dissimilar risk and return expectations of shareholders and creditors; and 2) the reliance of creditors on the equity cushion provided by shareholder investment").

101. The object and policy of mandatory subordination "serve[ ] to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.),* 493 F.3d 1067, 1071 (9th Cir. 2007).

102. On their face, the Alleged Insider Claims, and all sums allegedly due thereunder, arise from the equity contributions of the Defendants, as insiders, to the Debtor.

103. Failure to subordinate the Alleged Insider Claims will result in the Defendants, the insiders of the Debtor, receiving undue recoveries against the Debtor's estate, to the detriment of holders of allowed general unsecured claims, including Plaintiff.

104. Pursuant to 11 U.S.C. § 510(b), the Alleged Insider Claims and all payment rights associated therewith must be subordinated to all claims against Debtor's estate.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**(Equitable Subordination of Alleged Insider Claims**

**Pursuant to 11 U.S.C. § 510(c) against Defendants)**

105. Plaintiff realleges and incorporates herein by reference each and every allegation contained above in this Complaint as if set forth fully herein full.

106. Section 510(c)(1) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

107. "Three findings are generally required before equitable subordination will be granted: (1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code." *In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996)(*citing In re Dominelli*, 820 F.2d 313, 318-19 (9th Cir.1987) (*citing Matter of Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir.1977).

108. Equitable subordination exists to offset an inequality in the claim position of a

creditor that will produce injustice or unfairness to other creditors in terms of bankruptcy results. *Trone v. Smith (In re Westgate-California Corporation)*, 642 F.2d 1174, 1177 (9th Cir. 1981).

109. Equitable subordination is sought when a creditor has engaged in some type of inequitable conduct that resulted in injury to the debtor's other creditors or conferred an unfair advantage on the claimant. *United States v. Noland*, 517 U.S. 535, 538-39, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

110. Section 510(c)(1) allows for subordination of otherwise allowed claims "when the principles of equity would be so offended by the allowance of such claims on a parity with those of other creditors." 4 COLLIER ON BANKRUPTCY ¶ 510.01 (Alan N. Resnick Henry J. Sommer, eds. 15th ed. rev. 2009).

111. Plaintiff is informed and believes, and on that basis alleges, that Debtor and Defendants sought to incur the alleged loans which Debtor asserts are the basis for the Alleged Insider Claims against the Debtor’s business in order to dilute any recovery to Plaintiff and the other general unsecured creditors of Debtor’s bankruptcy estate to the detriment of all general unsecured creditors of the Estate.

112. BDI built out the Property allowing Debtor to generate significant income from Emerson and Stryker as tenants on the Property.

113. Due to BDI’s construction of the Property through the Project, Debtor and the Defendants, who are insiders of the Debtor, have benefitted from the collection of millions of dollars in rental income from the Property.

114. Pre-petition, Debtor and the Defendants, who are insiders of the Debtor, have benefitted from the collection of the millions of dollars in rental income from the Property, while failing to pay Plaintiff on the BDI Claim.

115. Through the listing of the Alleged Insider Claims on the Schedules, Debtor and the Defendants, who are insiders of the Debtor, sought to dilute any recovery to the general unsecured creditors, including Plaintiff.

116. As set forth above in the First Claim for Relief, there is no evidence to support the validity of the Alleged Insider Claims.

GOE FORSYTHE & HODGES LLP
17701 Cowan, Suite 210
Irvine, CA 92614

117. Post-petition, Debtor and the Defendants, who are insiders of the Debtor, have benefitted from the collection of the monthly rental income from the Property.

118. It would be inequitable to allow the Alleged Insider Claims to share in the distribution with general unsecured creditors of the Debtor's bankruptcy estate.

119. Failure to subordinate the Alleged Insider Claims will result in the Defendants, the insiders of the Debtor, receiving undue recoveries against the Debtor's estate, to the detriment of holders of allowed general unsecured claims, including Plaintiff.

120. Pursuant to 11 U.S.C. § 510(c), the Alleged Insider Claims and all payment rights associated therewith should be subordinated to all claims against Debtor's estate.

## PRAYER FOR RELIEF

WHEREFORE, on its claim for relief, Plaintiff prays for entry of a judgment as follows:

**On the First Claim for Relief:**

For judgment and/or order disallowing the Alleged Insider Claims of the Defendants asserted against the Debtor's bankruptcy estate in their entirety pursuant to 11 U.S.C. § 502, California Civil Code § 1624(a), California Code of Civil Procedure § 339 and California Constitution Article XV, Section 1.

**On the Second Claim for Relief:**

For a declaration that the Alleged Insider Claims held by Defendants are not valid, allowable, general unsecured claims against the Debtor's bankruptcy estate and are recharacterized as equity interests in the Debtor,

**On the Third Claim for Relief:**

For judgment and/or order pursuant to 11 U.S.C. § 510(b), that the Alleged Insider Claims and all payment rights associated therewith are subordinated to all claims against Debtor's estate.

**On the Fourth Claim for Relief:**

For judgment and/or order pursuant to 11 U.S.C. § 510(c), that the Alleged Insider Claims and all payment rights associated therewith are subordinated to all claims against Debtor's estate.

**On all Claims for Relief:**

For attorneys' fees as permitted by law.

GOE FORSYTHE &
HODGES LLP
17701 Cowan, Suite 210
Irvine, CA 92614

For costs of suit as permitted by applicable law.

For such other relief as the Court deems just and proper.

Dated: November 13, 2026

Respectfully submitted by

**GOE FORSYTHE & HODGES LLP**

By: /s/ *Robert P. Goe*
Robert P. Goe
Attorneys for Plaintiff Binnquist Development Incorporated

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 17701 Cowan, Suite 210, Bldg. D, Irvine, CA 92614

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

COMPLAINT, AND EARLY MEETING OF COUNSEL AND STATUS CONFERENCE INSTRUCTIONS________________________

______________________________________________________________________________________________

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/20/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Robert P Goe rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notfiy.bestcase.com; ajohnston@goeforlaw.com;
United States Trustee (RS) ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) 11/20/2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

XXXX Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 11/20/2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Magdalena Reyes Bordeaux, USBC, 3420 Twelfth Street, Suite 325, Riverside, CA 92501

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _11/20/2026 | Susan C. Stein | /s/Susan C. Stein |
| *Date* | *Printed Name* | *Signature* |

Dennis French Enterprises, LLC
77-564 Country Club Drive, Suite 150
Palm Desert, California 92211.

Dennis French Enterprises, LLC,
c/o Dennis French, Agent for Service of Process
45674 Gurley Drive
Indian Wells, California 92210.

Landar Inc.
77-564 Country Club Drive, # 100
Palm Desert, California 92211

Landar Inc.
c/o Becky A. Casten, Agent for Service of Process
77-564 Country Club Drive, # 100
Palm Desert, California 92211.

Landar Inc.
c/o Dennis French, CEO and Secretary
10002 Via Solano Court
Reno, Nevada 89511

Landar Inc.
c/o Dennis French, CFO
77-564 Country Club Drive, # 100
Palm Desert, California 92211.

Sunbelt Holdings Limited
aka Sunbelt Holdings, LLC
77564 Country Club Drive, Suite 100
Palm Desert, California 92211

Sunbelt Holdings Limited
c/o Dennis French, Agent for Service of Process
77564 Country Club Drive, Suite 100
Palm Desert, California 92211

T&T Heritage Inc.
aka T and T Heritage, Inc.
77-564 Country Club Drive, Suite 150
Palm Desert, California 92211

Tee Time Cash, LLC
c/o President / Manager
77-564 Country Club Drive, Suite 150
Palm Desert, California 92211